JOHN B. E. SLOAN ET AL., APPELLANTS, VS. SUSAN M. SLOAN ET AL., APPELLEES.

1. The statutes of Florida do not clothe a "foreign executor" with authority to defend a suit in her courts, nor can such authority be given by consent of parties that he shall become a party defendant to a suit pending and an order therein making such a party.

2. Where a defect of necessary parties, which existed prior to the decree appealed from, is discovered on appeal, the decree may be reversed, and the cause remanded with leave to make parties, and for further proceedings.

Appeal from Circuit Court for Marion county.

The facts of this case, so far as necessary to an under-
standing of the points decided, are as follows:

The appellees, Susan M. and Sallie H. Sloan, filed on
July 5th, 1883, their bill in equity against John B. E.
Sloan and William P. Hall, citizens of South Carolina,
Adie E. Waterman and Summerfield M. G. Gary, citizens
of Florida, alleging that William Sloan was, in his life
time, between the years 1856 and 1862, seised in fee of a
quarter section of land under a deed from one Jacob Mil-
ler, bearing date August 25, 1855, and of 461.39-100
acres under a deed from the Trustees of the Internal Im-
provement Fund, bearing date November 20, 1856, and of
643 acres of land by deed of November 17, 1858, from
said Trustees, and of a sixteenth of a section by deed from
one N. P. Hotchkiss, dated November 11, 1860. Copies
of the deeds, describing the lands, are annexed to the bill
as parts thereof, and the lands are situate in Marion county;
that complainants are daughters of said William Sloan,
and with David W. Sloan and William L. Sloan are the
only surviving heirs of William Sloan and that David W.
and William L., have conveyed all their interest in the
lands to the complainants; that their father died in Texas
in the year 1862, leaving a will which was signed in the
presence of but two witnesses, and has never been probated
in Florida; that during the year 1869, one Michæl A.
Clontz, then sheriff of Marion county, "pretended *ex-officio*
as such sheriff to administer on the estate of said William
Sloan, deceased, without the knowledge or consent of your
orators, and without any petition or request of any one in-
terested in said estate, and that such administration was
illegal, unauthorized and void from the beginning to the
end of the same;" that in pursuance of such illegal and

void administration, the said Clontz did, on August 24, 1869, file in the County Court of said county·a petition as administrator, praying an order for the sale of real estate of their father.

The petition did not describe any real estate of said William and did not allege that his personal assets were exhausted ; there was no sworn schedule of the debts due from his estate, to pay which a sale was sought to be decreed, and the petition was not sworn to, or verified in any way ; that on the day the petition was filed, the County Judge, Edward Barker, made an order authorizing Clontz to sell the real estate of William Sloan, but this order did not describe any real estate decreed therein to be sold, and did not recite any jurisdictional fact of the exhaustion of the personal assets, and the existence of debts authorizing the granting thereof, and the same is void.  A copy of the petition and order are annexed as parts of the bill.  The petition states that due and legal notice was published for space of four weeks, in the "East Florida," that application would be made for permission to sell  "the real estate of William Sloan, late of Marion county, deceased," and prays " an order for the sale of the real estate of the aforesaid William Sloan, as the law in such cases provides."  The order is for the sale of the " real estate of the said William Sloan "; that in accordance with, and by virtue of said void order, Clontz did, on the 4th day of October, 1869, purport to sell to one S. C. DaBruhl all of the lands of William Sloan for the grossly inadequate and unfair sum of $664; they consisting of nearly 1400 acres, as hereinbefore described.  A copy of the report of sale is annexed to the bill as part thereof.  That this sale was a part of a fraudulent conspiracy between Clontz and DaBruhl, J. B. E. Sloan and Hall, to depreciate the value of said property, and so manage the sale thereof as to have the said DaBruhl

buy in the same for greatly less than its value ; and after-wards, in pursuance of the same scheme, to permit the defendants, J. B. E. Sloan and Hall, to obtain titles to all of said real estate for a grossly inadequate consideration ; "all of which was so done by the said parties, and said conspiracy carried out as will hereinafter appear ;" that on June 10, 1870, the said County Judge made an "order confirming a purported sale of certain lands made on the 4th day of October, 1869," by Clontz, as administrator of William Sloan, "to John B. E. Sloan and William P. Hall, and further ordered that the said John O. Matthews, administrator," make and deliver proper titles to Sloan and Hall, as the highest bidders at such sale ; and that in pursuance of this illegal and invalid order Matthews, as Sheriff and *ex-officio* administrator of William Sloan, con-veyed all the above described lands, except about 80 acres, to J. B. E. Sloan and Hall by deed dated June 14, 1870, of which a copy is annexed to the bill as a part thereof. This deed was executed in pursuance of the same conspi-racy to depreciate the value of the lands and defraud com-plainants, and "is absolutely null and void in effect, save that it casts a cloud upon the title of complainants," the said original order being made without jurisdiction by the County Court, and not describing the land to be sold, and the sale being made to one DaBruhl, and not to Sloan and Hall, the order confirming sale and ordering deed to be executed providing that the same should be made to J. B. E. Sloan and Hall, and not describing the lands or sale sufficiently, and the deed not being made by the adminis-trator who made the sale, and Matthews having no au-thority to make it ; that on the —— day of May, 1875, the clerk of the County of Marion, and State of Florida, exe-cuted a tax deed in pursuance of a sale for State and county taxes of the above described lands in sections 14

and 15 S., R. 23 E., to one Adie E. Waterman, as appears by deed recorded in book " A," Tax deeds of said county, a copy of which is annexed as a part of the bill; that said tax title is void, the said lands of William Sloan having been assessed for the year 1873, for which year's taxes they were sold, with other lands not the lands of William Sloan or any one claiming under him, and a large part of the lands so conveyed to Waterman, viz: 680 acres, having been assessed that year by the collector of taxes and not by the assessor, and there being no warrant attached to such assessment, and the balance of said lands being assessed to J. B. E. Sloan on the tax book for 1873, without a warrant to collect attached to the same, being improperly described and no legal notice or record of notice of the sale of said lands for the year 1873, and the sale for taxes of said land for the year 1873 is in many other ways illegal, and the deed in pursuance of the same utterly null and void, save that it casts a cloud upon the title of complainants to said land; that Waterman, by deed dated August 16, 1878, conveyed to S. M. G. Gary all said land in sections 14 and 15, T. 15, R. 23, S. and E., conveyed to the former by said tax deed; that Waterman had no claim of title to said land except said void tax deed, and the deed to Gary is utterly null and void except that it casts a cloud upon complainant's title; that Gary, by deed of January 1, 1879, has conveyed said lands to J. B. E. Sloan and Hall, which deed is alleged to be null and void as Gary has no claim or title to the lands save the deed from Waterman, but it casts a cloud upon complainants' title. Copies of the deeds are annexed as parts of the bill; that complainants are in possession of said lands, and said several deeds cast a cloud upon their title, and prevent them from disposing of the same at an adequate price, and may

38

hereafter be used by said defendants when the evidences of illegality of said deeds are lost, and may cost vexatious litigation to complainants.

The prayer of the bill is for an injunction against the defendants encumbering or conveying the lands, or exercising or attempting to exercise any acts of ownership over the same, and from asserting any ownership under said deeds, or commencing or prosecuting any suits at law against complainants, or those claiming under them, to obtain possession or the title of said lands by virtue of said deeds, or from using them for any purpose, and that the administrator's sale be set aside and vacated, and the deed from Matthews to Sloan and Hall be decreed to be delivered up, and to be cancelled of record by the clerk of Marion county, and that the tax deed, and the deed from Waterman to Gary, and that from Gary, be decreed to be null and void, and to be delivered up and cancelled on the records of the county, and for general relief.

The defendants, J. B. E. Sloan and Gary, answered the bill, and there was replication to the answer of the former. Gary disclaims having any personal interest in the land, he acting in what he did in taking title as the attorney of Hall and J. B. E. Sloan ; they having furnished him with the money to pay Waterman for the land conveyed to him, and he taking title to himself because he did not then know Hall's christian name.

On the 14th day of May, 1884, by consent of counsel for complainants and defendants, the Chancellor made an order reciting that Hall was then dead, and that Susan Hall, Francis P. Salas and John B. E. Sloan are executors and executrix of his last will and testament, in the State of South Carolina, " as appears by the certificate of letters testamentary to said executrix, given by the Probate Judge of Charleston county, South Carolina, now on file in this

case," and ordering "that said Susan Hall, executrix, and Francis P. Salas and John B. E. Sloan, executors of the last will and testament of said William P. Hall, deceased, be, and they are hereby made parties to the said cause as legal representatives of said William P. Hall, deceased, defendant," &c. The "certificate" mentioned appears in the record, and bears date October 6, 1883.

Afterwards a stipulation was filed by which all the defendants in the case adopt the answer of John B. E. Sloan as the answer of each, and complainants "join issue upon and reply" to said answer as they have to the Sloans.

Testimony was taken and the cause coming on to be heard in the Circuit Court, there was a decree in favor of the complainants, and from this decree the defendants have appealed.

*A. W. Cockrell & Son* for Appellants.

*C. P. & J. C. Cooper* for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court:

The purpose of the bill in this case is the removal of a cloud upon title to real estate.

We meet at the threshhold, upon reading the record, the fact that there is a want of necessary parties. Neither the common law, the law of nations, nor the statutes of this State permit a suit to be maintained in our courts *against* an executor or administrator who has obtained his letters testamentary, or of administration from the courts of another State; or, in the language of Judge Forward, in Gordon vs. Simonton, 10 Fla., 196, "in the absence of any statute the well settled rule is that a party cannot sue or defend in our courts as executor or administrator, under the authority of a foreign court of probate, for the reason

that our courts will recognize the personal representative of the deceased in his representative character, unless clothed with authority derived from our law. The statute of our State does clothe foreign executors and administrators with authority to bring suits, but does not authorize them to defend suits." Story's Conflict of Laws, §514 ; McClellan's Digest, §73, page 97. They are authorized by statute upon producing probate of wills, or letters of administration duly authenticated under the act of Congress, "to maintain actions in the several courts of this State under the same rules and regulations as other *plaintiffs*." It does not occur to us now that even the provision in our attachment laws, (§5, p. 112, McClellan's Digest,) as to executors or administrators who may have removed from or reside beyond the limits of the State, is any exception to the above rule ; but if it is such it does not apply here.

The executors and executrix of William P. Hall, who, after his death, were by consent made parties defendant to represent his interests, as appears in the statement of the case, cannot, by virtue of their authority as such from the court of South Carolina, defend this suit. It would be idle to argue that consent can give the right or power. The record does not show the will, nor whether it conforms to the laws of Florida as to wills of realty ; (20 Fla., 849 ;) nor any probate here of the will; (sec. 3, p. 77, McClellan's Digest ;) nor any record made of a foreign probate in our Probate Court ; (sec. 8, p. 987, McClellan's Digest ;) nor any devise of the lands in question to the executors or executrix. It shows, at most, only that such executors and executrix " are the legally qualified executors and executrix of the last will and testament of W. P. Hall, late of Charleston, deceased, and are authorized " [under the laws of South Carolina] " to receive all money, principal

and interest, income, dividends, rents, profits," &c., and this by a "certificate" of letters testamentary or executorship on the last will of Hall from the Judge of Probate of that county, which certificate, it may be, serves the purpose of letters testamentary in that State. Their right to represent Hall's interest depends then, so far as appears in this record, wholly upon their authority from the Probate Court of South Carolina, and this is of no effect here.

Hall is not shown nor claimed by the bill to have the status which would have made him a merely formal party, his interests were material. The title deeds from Matthews, sheriff, and *ex-officio* administrator, purport to convey the land it covers to him and J. B. E. Sloan, as alleged in the bill in fee, as does the deed from Gary the tax sale lands. The answer of Sloan adopted by the other defendants states that the former land was paid for, " part in cash, and part by the notes of William Sloan, which this respondent and said Hall then held and owned," and that they have since been in possession and control of it, and have expended large sums of money in improving the same and have paid the taxes, and that they purchased the tax sale lands for value. The basis of the title to the former lands is the proceedings in Marion County Court, and of that to the latter is the tax assessment. Both, with the conveyances founded thereon, are attacked in the bill as illegal and void. They, including the conveyances, cannot be illegal and void as to J. B. E. Sloan, and not so as to Hall, under the theory of this bill; nor can they be adjudged void, and cancelled and the deeds be delivered up for cancellation, without essentially affecting the rights of Hall, as well as those of Sloan, nor is it sought to do so. The proceedings in the County Court, the assessment, and the deeds are each assailed and sought to be set aside and annulled, and the deeds to be delivered up for cancellation

as an entire thing; and it has been decreed accordingly, after Hall's death, without any one entitled to represent the interest he held being before the court. We are not satisfied that the persons entitled to represent such interest would not be indispensable parties, even if it had been sought to proceed against Sloan without them; but nothing of the kind has been attempted, and there is a decree annulling the title, both as to Hall and Sloan. Shields vs. Barrow, 17 How., 130; Robertson vs. Carson, 19 Wall., 94; Coiron vs. Millaudon, 19 How., 113; Brookes vs. Burt, 1 Beavan, 106, 112; Story's Eq. Pl., §159.

Whether Hall died testate or intestate as to this land we do not know. His heirs or devisees, according as he died testate or intestate, as to the land, in the absence of an executor or administrator duly appointed by a competent court in this State, are necessary parties; and, on the other hand, if there be such an executor or administrator, he will be a necessary party, and the heirs or devisees will be, at least, proper parties. New parties cannot be made, under the circumstances, in this court, so we must reverse the decree, and send the case back to the Circuit Court, where such parties can be made, and such other proceedings taken as are proper. Alston vs. Rowles, 13 Fla., 110; Russel vs. Clarke, 7 Cr., 69.

It is so ordered.